# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 22, 2015          Decided March 1, 2016

No. 14-5249

INDEPENDENCE INSTITUTE, A COLORADO NONPROFIT CORPORATION,
APPELLANT

v.

FEDERAL ELECTION COMMISSION,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-01500)

*Allen Dickerson* argued the cause for appellant. With him on the brief was *Tyler Martinez*.

*Herbert W. Titus*, *William J. Olson*, *John S. Miles*, *Jeremiah L. Morgan*, and *Robert J. Olson* were on the brief for *amici curiae* Citizens United, et al. in support of appellant.

*Greg J. Mueller*, Attorney, Federal Election Commission, argued the cause for appellee. With him on the brief were *Lisa J. Stevenson*, Deputy General Counsel, *Kevin Deeley*, Acting Associate General Counsel, and *Erin Chlopak*, Acting Assistant General Counsel. *Michael Columbo*, Attorney, entered an appearance.

*J. Gerald Hebert*, *Lawrence M. Noble*, *Scott L. Nelson*, *Fred Wertheimer*, *Donald J. Simon*, and *Charles Fried* were on the brief for *amici curiae* Campaign Legal Center, et al. in support of defendant-appellee.

Before: GRIFFITH, KAVANAUGH, and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH, with whom *Circuit Judge* GRIFFITH joins.

Dissenting opinion filed by *Circuit Judge* WILKINS.

KAVANAUGH, *Circuit Judge*:  The Bipartisan Campaign Reform Act of 2002, known as BCRA or the McCain-Feingold Act, requires speakers who make "electioneering communications" to disclose some of their donors.  An electioneering communication is a broadcast, cable, or satellite communication that refers to a candidate for federal office and is aired within 60 days of a general election.  *See* 52 U.S.C. § 30104(f).

Independence Institute is a Section 501(c)(3) nonprofit organization located in Colorado.  In 2014, the Institute supported a proposed federal statute that would reform federal sentencing.  Independence Institute wanted to run a radio advertisement in favor of the proposed law.  The advertisement would encourage citizens to express their support of the law to Colorado's U.S. Senators, Mark Udall and Michael Bennet.

The Institute intended to air the advertisement in the fall of 2014.  At that time, however, Senator Udall was running for re-election.  The radio spot would therefore qualify as an electioneering communication within the meaning of BCRA.

As a result, Independence Institute would have to disclose some of its donors.

Independence Institute says that 501(c)(3) nonprofit organizations possess a First Amendment right to air issue advertisements without disclosing their donors. Independence Institute therefore sued the FEC, arguing that BCRA's disclosure requirement was unconstitutional as applied to this situation.

The Institute asked the District Court to convene a three-judge district court pursuant to the statutory provision that requires three-judge district courts for constitutional challenges to BCRA. *See* 52 U.S.C. § 30110 note. But the District Court denied the Institute's request for a three-judge district court. On the merits, the District Court held that Independence Institute's claim was unavailing under *McConnell v. FEC*, 540 U.S. 93 (2003) and *Citizens United v. FEC*, 558 U.S. 310 (2010), which respectively upheld BCRA's disclosure requirement against a facial challenge and against one particular as-applied challenge. *See Independence Institute v. FEC*, 70 F. Supp. 3d 502, 506-15 (D.D.C. 2014).

On appeal, Independence Institute argues that the District Court erred in denying the request for a three-judge district court. Our review of that question is de novo. *See LaRouche v. Fowler*, 152 F.3d 974, 981-86 (D.C. Cir. 1998).

\* \* \*

On its face, BCRA requires that a three-judge district court adjudicate Independence Institute's First Amendment claim. The Act states that a constitutional challenge to one of BCRA's provisions "shall be heard by a 3-judge court convened pursuant to section 2284 of title 28." 52 U.S.C. § 30110 note.

Section 2284 also says "shall": A three-judge district court "shall be convened when otherwise required by Act of Congress," such as BCRA. 28 U.S.C. § 2284.*

To be sure, Section 2284 is not absolute. It requires a three-judge district court "unless" the single district court judge "determines that three judges are not required." *Id.* But in its recent decision in *Shapiro v. McManus*, the Supreme Court interpreted that language to mean that the single district court judge should determine only "whether the 'request for three judges' is made in a case covered by § 2284(a) – no more, no less." 136 S. Ct. 450, 455 (2015), slip op. at 5.

Because Independence Institute's complaint raises a First Amendment challenge to a provision of BCRA, Section 2284(a) entitles it to a three-judge district court.

---

* In relevant part, the judicial review section of BCRA provides as follows: "(a) If any action is brought for declaratory or injunctive relief to challenge the constitutionality of any provision of this Act or any amendment made by this Act, the following rules shall apply: (1) The action shall be filed in the United States District Court for the District of Columbia and *shall be heard by a 3-judge court convened pursuant to section 2284 of title 28, United States Code.*" 52 U.S.C. § 30110 note (emphasis added). In turn, 28 U.S.C. § 2284 provides in relevant part: "(a) A district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body. (b) In any action required to be heard and determined by a district court of three judges under subsection (a) of this section, the composition and procedure of the court shall be as follows: (1) Upon the filing of a request for three judges, the judge to whom the request is presented shall, unless he determines that three judges are not required, immediately notify the chief judge of the circuit . . . ." 28 U.S.C. § 2284.

The only remaining barrier to Independence Institute's request for a three-judge district court is the general jurisdictional requirement that a suit must raise a substantial federal question.   As the Supreme Court explained in *Shapiro*: "Absent a substantial federal question, even a single-judge district court lacks jurisdiction, and a three-judge court is not required where the district court itself lacks jurisdiction of the complaint or the complaint is not justiciable in the federal courts."   *Id.* at 455, slip op. at 5-6 (internal quotation marks omitted).

But as the *Shapiro* Court stressed, the exception for insubstantial claims is narrow.   It applies only when the case is "essentially fictitious, wholly insubstantial, obviously frivolous, and obviously without merit."   *Id.* at 456, slip op. at 7 (quoting *Goosby v. Osser*, 409 U.S. 512, 518 (1973)) (internal quotation marks omitted).   The Supreme Court has emphasized, moreover, that "the adverbs" are "no mere throwaways":   The "limiting words 'wholly' and 'obviously' have cogent legal significance."   *Id.* (quoting *Goosby*, 409 U.S. at 518) (internal quotation marks omitted).

The bar that a complaint must clear is "low."   *Id.* at 456, slip op. at 7.   "Constitutional claims will not lightly be found insubstantial for purposes of the three-judge-court statute." *Id.* at 455, slip op. at 6 (alterations and internal quotation marks omitted).

The FEC argues that Independence Institute's case fails to clear even that low bar because, according to the FEC, *McConnell* and *Citizens United* render Independence Institute's First Amendment claim "essentially fictitious, wholly insubstantial, obviously frivolous, and obviously without merit."   *Id.* at 456, slip op. at 7; *see McConnell v.*

*FEC*, 540 U.S. 93, 196-99 (2003); *Citizens United v. FEC*, 558 U.S. 310, 366-69 (2010).   We disagree.

BCRA requires speakers who make electioneering communications to disclose some of their donors.   52 U.S.C. § 30104.   In *McConnell*, the Supreme Court rejected a facial challenge to BCRA's disclosure requirement.   *See McConnell*, 540 U.S. at 196-99.   But the Court allowed future as-applied challenges.   *Id.* at 199.   In *Citizens United*, the Supreme Court rejected one such as-applied challenge, which attempted to limit BCRA's disclosure requirement to those electioneering communications that constitute express advocacy or the functional equivalent of express advocacy for a candidate.   *See Citizens United*, 558 U.S. at 368-69.

In this case, Independence Institute says that it is raising a different as-applied challenge to BCRA, and it asserts that *Citizens United* therefore is not controlling here. Independence Institute seeks to distinguish *Citizens United* on the ground that Independence Institute is a 501(c)(3) charitable nonprofit organization, whereas Citizens United was a 501(c)(4) advocacy organization.   According to Independence Institute, 501(c)(3) charitable groups serve different purposes and have greater interests in privacy than do 501(c)(4) advocacy groups.   It argues, moreover, that the Government has less of an interest in publicly identifying the donors to 501(c)(3) groups.   Independence Institute contends that the First Amendment therefore protects it against BCRA's disclosure requirement.

In *Citizens United*, the Supreme Court did not address whether a speaker's tax status or the nature of the nonprofit organization affects the constitutional analysis of BCRA's disclosure requirement.   *See* 558 U.S. at 369.   And the FEC cites no precedent from the Supreme Court (or any other court)

rejecting the argument advanced here by Independence Institute. The nature of our system of legal precedent is that later cases often distinguish prior cases based on sometimes slight differences. *See, e.g.*, *Arizona Christian School Tuition Org. v. Winn*, 563 U.S. 125 (2011); *Michigan v. Bryant*, 562 U.S. 344 (2011); *see generally* Richard M. Re, *Narrowing Precedent in the Supreme Court*, 114 COLUM. L. REV. 1861 (2014). Here, we cannot say that Independence Institute's attempt to advance its as-applied First Amendment challenge is "essentially fictitious, wholly insubstantial, obviously frivolous, and obviously without merit." *Shapiro*, 136 S. Ct. at 456, slip op. at 7. That is not to suggest that Independence Institute's argument is a winner. Independence Institute's 501(c)(3) argument may or may not prevail on the merits, but Section 2284 "entitles" the Institute to make its case "before a three-judge district court." *Id.*

Independence Institute also contends that the First Amendment bars compelled disclosure of donors unless the electioneering communication is unambiguously campaign-related. The FEC responds that *McConnell* and *Citizens United* squarely rejected that argument. *Cf. Republican National Committee v. FEC*, 130 S. Ct. 3544 (2010), *affirming Republican National Committee v. FEC*, 698 F. Supp. 2d 150, 156-58 (D.D.C. 2010) (rejecting this distinction of *McConnell* and *Citizens United*). We do not address that argument. Because Independence Institute has advanced at least one argument – the 501(c)(3) argument – that is not "essentially fictitious, wholly insubstantial, obviously frivolous, and obviously without merit," the case must proceed to a three-judge court. *Shapiro*, 136 S. Ct. at 456, slip op. at 7. When a case falls within Section 2284 and requires a three-judge district court, "a single judge shall not . . . enter judgment on the merits" of any claim. 28 U.S.C. § 2284(b)(3); *see Shapiro*, 136 S. Ct. at 455, slip op. at 5.

8

\* \* \*

Independence Institute is entitled to make its case to a three-judge district court.   Therefore, we reverse the judgment of the District Court denying the request for a three-judge district court, vacate the judgment of the District Court in favor of the FEC, and remand the case to the District Court with directions for it to initiate the procedures to convene a three-judge district court.

*So ordered.*

WILKINS, *Circuit Judge*, dissenting: Independence Institute believes that the definition of "electioneering communication" under the Bipartisan Campaign Reform Act of 2002 ("BCRA"), as well as the Act's disclosure provisions for electioneering communications, is unconstitutionally overbroad. In my view, a misreading of *Buckley v. Valeo,* 424 U.S. 1 (1976), underpins and is fatal to both of these claims. As a result, I disagree that the several immaterial factual distinctions that the Institute offers to distinguish its challenge from that in *Citizens United v. FEC*, 558 U.S. 310 (2010), such as its tax status, can transform its case into one presenting a substantial constitutional question. *See Shapiro v. McManus*, 136 S. Ct. 450, 455-56 (2015).

The Institute's core contention in this lawsuit is that *Buckley* created an "unambiguously campaign related" gloss on the definition of electioneering communications. In its view, the only speech that should be considered an electioneering communication, and therefore trigger the BCRA's reporting and disclosure requirements, is speech that is "unambiguously related" to a campaign. The Institute filed a two-count complaint, and this reading of *Buckley* is central to both causes of action. In its first count, the Institute premised its attack on the definition of electioneering communication on "the dichotomy between issue speech and political speech in *Buckley*," Compl. ¶ 101, and it sought a declaration that its proposed advertisement does not constitute an "electioneering communication" under the BCRA, as properly defined, *id*. ¶¶ 113-114. In its second count, repeatedly citing *Buckley*, *id*. ¶¶ 120-122, the Institute attacked the BCRA disclosure requirements, alleging that "if a group does not have 'the major purpose' of political activity, only communications that 'expressly advocate the election or defeat of a clearly identified candidate' are subject to disclosure," *id*. ¶ 122 (citing *Buckley*, 424 U.S. at 80).

Accordingly, the Institute made *Buckley* its centerpiece in its briefing before the district court. It urged that the BCRA's definition of electioneering communication "impermissibly blurs the line between candidate advocacy, which may be regulated, and issue advocacy, which generally cannot." *See* Mot. Prelim. Inj. 22 (citing *Buckley*, 424 U.S. at 42-44). The Institute's argument on disclosure was that no Supreme Court case since *Buckley* did away with the "unambiguously campaign related standard," and that in particular "[t]he disclosure upheld in *Citizens United* was for donors who explicitly contributed for a communication that is the functional equivalent of express advocacy—not genuine issue speech." *Id.* at 14; *see also* Appellant Br. 34 ("Neither *Citizens United* nor *McConnell* modified *Buckley*'s 'unambiguously campaign related' limitation.").

There's only one problem – the Institute's reading of *Buckley* is squarely foreclosed by subsequent Supreme Court precedent. In *McConnell v. FEC*, the Court called the argument that *Buckley*'s constitutional holding requires a gloss on the BRCA's definition of "electioneering communication" to permit "so-called issue advocacy" a "misapprehen[sion] [of] our prior decisions," and rejected the idea that "*Buckley* drew a constitutionally mandated line between express advocacy and so-called issue advocacy." 540 U.S. 93, 190 (2003), *overruled on other grounds by Citizens United v. FEC*, 558 U.S. 310 (2010); *id.* ("[T]he express advocacy restriction was an endpoint of statutory interpretation, not a first principle of constitutional law.").

More troublingly, the Institute asks us to overlook the fact that the Supreme Court expressly rejected its broader argument in *Citizens United*. There, the Court said: "The principal opinion in [*FEC v. Wisconsin Right to Life, Inc.*, 551 U.S. 449 (2007)] limited 2 U.S.C. § 441b's restrictions on

independent expenditures to express advocacy and its functional equivalent. *Citizens United seeks to import a similar distinction into BCRA's disclosure requirements. We reject this contention.*" *Citizens United*, 558 U.S. at 368-69 (citation omitted) (emphasis added).

I do not see how this lawsuit even "clears *Goosby*'s low bar" of substantiality. *Shapiro*, 136 S. Ct. at 456 (citing *Goosby v. Osser*, 409 U.S. 512 (1973)). Both claims raised by the Institute rely upon the contention that the BCRA's disclosure provisions should only apply to unambiguously campaign related speech, but the "unsoundness [of that argument] so clearly results from the previous decisions of [the Supreme] Court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy." *Goosby*, 409 U.S. at 519 (quoting *Ex parte Poresky*, 290 U.S. 30, 32 (1933), quoting in turn from *Hannis Distilling Co. v. Baltimore*, 216 U.S. 285, 288 (1910)).

There is an important difference between a plaintiff who offers a novel argument seeking to extend a holding, dictum, or even a suggestion from a previous majority or separate opinion, and a plaintiff who repackages an already foreclosed legal theory. The substantial federal question standard charges us with distinguishing between the two. The majority opinion evades the question of whether the "unambiguously campaign related" argument is insubstantial, and focuses instead on the factual distinction of the Institute's tax status. Majority Op. at 6-8. But what the Institute has never explained in its briefing, and what the majority does not explain in its opinion, is how the Institute can prevail on either of its causes of action without prevailing on its core contention that electioneering communications under the BCRA must be limited to speech that is "unambiguously

campaign related." Without such an explanation, the factual distinctions being raised are of no consequence, and the claims remain "frivolous or immaterial." *Steel Co.* v. *Citizens for Better Environment*, 523 U. S. 83, 89 (1998).

I would dismiss this case for lack of jurisdiction. I dissent.