NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**BENCH CREEK RANCH, LLC, PAUL PLOUVIEZ,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2020-2151

---

Appeal from the United States Court of Federal Claims in No. 1:19-cv-01331-PEC, Judge Patricia E. Campbell-Smith.

---

Decided: May 7, 2021

---

A. BLAIR DUNN, Western Agriculture, Resource and Business Advocates, LLP, Albuquerque, NM, for plaintiffs-appellants.

BENJAMIN RICHMOND, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by ERIKA KRANZ, JEAN E. WILLIAMS.

---

Before TARANTO, LINN, and CHEN, *Circuit Judges.*

TARANTO, *Circuit Judge.*

Paul Plouviez owns Bench Creek Ranch, LLC, which operates a ranch in Washoe County, Nevada. Mr. Plouviez and Bench Creek Ranch (collectively, Bench Creek) brought the present action against the United States in the Court of Federal Claims (Claims Court). Bench Creek alleged in its complaint that, after a wildfire in July 2017, hundreds of wild horses on federal lands—owned by the United States and managed by the Bureau of Land Management—drank water that belonged to Bench Creek under a permit the Bureau issued to Bench Creek for grazing livestock on the lands at issue. Bench Creek alleged that the Bureau's failure to manage the wild horses resulted in a taking of its property without just compensation, in violation of the Takings Clause of the Fifth Amendment to the United States Constitution. The Claims Court dismissed the complaint for lack of jurisdiction. We affirm.

I

Bench Creek holds a grazing permit from the Bureau for the Dixie Valley Allotment—federally owned land that surrounds Bench Creek's land. The permit allows Bench Creek to use parts of the allotment for grazing, while stating that the permit "conveys no right, title or interest held by the United States in any lands or resources." J.A. 71. Bench Creek alleged in its complaint here that after a wildfire occurred in July 2017, it counted about 500 wild horses that had been "appropriating drinking water from Plaintiffs' vested water rights" in the Bureau land covered by Bench Creek's grazing permit. J.A. 15.

On July 9, 2018, Mr. Plouviez sent a letter to the Bureau regarding the horses' continuing water consumption despite his earlier protests, and he included an invoice for compensation based on an estimate of the amount of water consumed. J.A. 245–46. On August 9, 2018, Mr. Plouviez

sent an additional letter with an invoice to the Bureau, seeking $397,440 in payment for the water consumed by the horses (including interest).  J.A. 19–21.

The Bureau responded to Mr. Plouviez on December 21, 2018, acknowledging the increased wild horse population in the area after the fire, but denying the request for compensation.  The Bureau stated that Nevada law allowed the water consumption by the wild horses and that the Bureau "does not have the legal authority under Federal law to make payments to ranchers for water consumed by wild horses on public lands."  J.A. 22–23.

On August 30, 2019, Bench Creek sued the United States in the Claims Court.  J.A. 13.  The sole count in the complaint alleges that the Bureau's "failure to manage the wild horses occupying Plaintiffs['] lands has effectuated a taking of their property" under the Tucker Act, 28 U.S.C. § 1491(a)(1).[1]  J.A. 16; *see also* J.A. 13 ("The failure of [the Bureau] to manage the wild horse population and the knowingly notorious usage of Plaintiffs['] water for the government's horses directly correlates to the act of creating and maintaining a nuisance for the intentional purpose of physically depriving Plaintiffs of their private property rights.").  Bench Creek asserted in the complaint that damages as of the time of filing amounted to $808,419.30 and that the amount "continue[d] to grow as the [Bureau] refuses to remove the wild horses or to provide their own source of water to the horses."  J.A. 17.

---

[1]    Bench Creek's complaint refers to the Declaratory Judgment Act, 28 U.S.C. § 2201, in its request for relief. J.A. 18.  After Bench Creek explained that such references resulted from "inartful pleading," the Claims Court deemed any claims to relief under the Declaratory Judgment Act abandoned.  J.A. 5.

The government filed a motion seeking dismissal for lack of subject-matter jurisdiction and failure to state a claim under Court of Federal Claims Rule 12(b) and, in the alternative, for summary judgment under Rule 56.  J.A. 29.  The Claims Court granted the motion to dismiss for lack of jurisdiction.  *Bench Creek Ranch, LLC v. United States*, 149 Fed. Cl. 222 (2020).  In doing so, the court held that Bench Creek's claim "implies two theories of liability, both of which sound in tort."  *Id.* at 226.  First, the court noted that it lacks jurisdiction to consider a claim alleging nuisance, which is a tort, because tort claims fall outside the court's jurisdiction under the Tucker Act.  *Id.*  Second, relying on *St. Bernard Parish Government v. United States*, 887 F.3d 1354, 1360–61 (Fed. Cir. 2018), the court held that it lacks authority to hear the claim because the claim challenges government inaction, which cannot support a takings claim.  *Bench Creek Ranch*, 149 Fed. Cl. at 226–27.  As a result, the court dismissed the complaint without prejudice.  *Id.* at 227.

Bench Creek Ranch timely appealed.  We have jurisdiction under 28 U.S.C. § 1295(a)(3).

II

We review the dismissal for lack of subject-matter jurisdiction de novo.  *Inter-Tribal Council of Ariz., Inc. v. United States*, 956 F.3d 1328, 1338 (Fed. Cir. 2020).  We accept well-pleaded factual allegations as true.  *Id.*  The plaintiff has the burden to establish subject-matter jurisdiction by a preponderance of the evidence.  *Id.* at 1337.

Under the Tucker Act, the Claims Court has jurisdiction to consider "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  As a matter of substantive law, we have held that "'the same operative facts may

give rise to both a taking and a tort.'" *Taylor v. United States*, 959 F.3d 1081, 1086 (Fed. Cir. 2020) (quoting *Moden v. United States*, 404 F.3d 1335, 1339 n.1 (Fed. Cir. 2005)). That is, the fact that government action *could* be characterized as a tort does not necessarily remove the claim from the Claims Court's jurisdiction, because the same action might support a takings claim. *See id.* at 1086–87. As the Claims Court noted, however, *see Bench Creek Ranch*, 149 Fed. Cl. at 224 n.1, our recognition of the potential for overlap does not mean that any set of facts that can support a tort claim can also support a takings claim.

In the present case, the allegations provide no substantial basis for a takings claim. Bench Creek's complaint rests on allegations that government *in*action—*i.e.*, the Bureau's "*failure* to manage the wild horses occupying Plaintiffs['] lands"—resulted in a taking of its water rights. J.A. 16 (emphasis added); *see also* J.A. 13, 16–17. But as the Claims Court explained, we have held that "[o]n a takings theory, the government cannot be liable for failure to act, but only for affirmative acts by the government." *St. Bernard Parish*, 887 F.3d at 1360. Even Bench Creek's assertion in this court that the government has "affirmatively resist[ed] years of requests to remedy the nuisance that they had created," Bench Creek Opening Br. at 11, refers to inaction. Given our clear precedent, Bench Creek's invocation of the Takings Clause is wholly insubstantial, and because the takings claim is the only asserted basis for Tucker Act jurisdiction, the Claims Court properly dismissed the complaint for lack of jurisdiction. *See Shapiro v. McManus*, 136 S. Ct. 450, 455–56 (2015) (discussing standard under *Bell v. Hood*, 327 U.S. 678 (1946), for insubstantiality in pleadings that transforms failure to state a claim into lack of jurisdiction); *Tenet v. Doe*, 544 U.S. 1, 12 (2005) (Scalia, J., concurring) ("[G]iven the squarely applicable precedent . . . , the absence of a cause of action is so clear that respondents' claims are frivolous—

establishing another *jurisdictional* ground for dismissal . . . ."); *see also Brownback v. King*, 141 S. Ct. 740, 749 n.8 (2021) ("In cases such as this one where a plaintiff fails to plausibly allege an element that is both a merit element of a claim and a jurisdictional element, the district court may dismiss the claim under Rule 12(b)(1) or Rule 12(b)(6). Or both.").

## III

For the foregoing reasons, we affirm the dismissal without prejudice for lack of subject-matter jurisdiction.

**AFFIRMED**